**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **STANLEY BROOKS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:24-cv-155 (MTT)** |
| | ) | |
| **Warden ANNETTIA TOBY, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Stanley Brooks, a former inmate at Hancock State Prison ("HSP"), filed this 28

U.S.C. § 1983 action against 24 defendants employed by the Georgia Department of

Corrections ("GDC").  Doc. 31.  In his amended complaint,[1] Brooks claims the

defendants violated the Eighth and Fourteenth Amendments by failing to protect him

from an inmate assault and by acting with deliberate indifference to his injuries after the

assault.  *Id.*  The defendants have moved to dismiss Brooks' complaint.  Doc. 35.  For

the following reasons, the defendants' motion to dismiss is **GRANTED** in part and

**DENIED** in part.

---

[1] In his initial complaint, Brooks asserted claims against the Georgia Department of Corrections and the Georgia Board of Regents.  Doc. 1.  As the Court ruled in a related case in which Brooks' counsel represents the plaintiffs, those defendants enjoy Eleventh Amendment immunity.  *See Spradlin v. Toby, et. al.*, No. 5:23-cv-328-MTT (M.D. Ga).  Accordingly, Brooks moved for and the Court granted leave to amend to drop those defendants.  Docs. 3, 4.  For the remaining defendants, Brooks does not expressly allege that they are sued in their individual capacities.  However, Brooks seeks only compensatory damages, which are not recoverable against government officials sued in their official capacity.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002).  Nor does Brooks argue in his response to the defendants' motion to dismiss that he has asserted any official capacity claims.  To the extent that Brooks intended to bring any official-capacity claims, those claims are **DISMISSED**.

## I.  BACKGROUND

### A.  Factual Background

On May 22, 2022, Brooks was injured during an inmate attack targeted toward his roommate, Charles McKee, who was a member of the LGBTI community.  Doc. 31 ¶¶ 1, 75, 77.  Brooks claims that the attack was caused by the defendants' deliberate indifference to dangerous conditions at HSP.  *Id.* ¶ 1.

#### 1.  *General Conditions at HSP Before McKee's Transfer*

According to Brooks, "serious inmate-on-inmate violence was the norm or something close to it" at HSP in the weeks and years before the May 2022 attack.  *Id.* ¶ 224.  Specifically, Brooks claims there was an "extensive history of violent encounters" at HSP including ten inmate deaths from 2017 until the attack in May 2022.  *Id.* ¶¶ 188-198.  Of the ten inmate deaths, at least six were murders.[2]  *Id.* ¶¶ 188, 189, 190, 192, 193, 195.  In addition to the murders, Brooks alleges that "numerous people…have been stabbed and maimed in [HSP]" both before and after the May 2022 attack.  *Id.* ¶ 198.

Brooks claims that the past violence at HSP was caused by the defendants' "failure to provide appropriate protection for inmates."  *Id.* ¶ 198.  Specifically, Brooks claims HSP officials failed to segregate violent inmates and inmates with mental illnesses from the rest of the prison population.  *Id.* ¶¶ 165, 166. Additionally, inmates in Brooks' dormitory, "E Dorm," "were allowed to roam freely at all hours of the day" and prison staff allowed "widespread use of cellular devices."  *Id.* ¶¶ 168, 173.  Brooks claims that the defendants "allowed inmates to fashion homemade weapons, import

---

[2] Brooks states that the other four inmates "died," and it is unclear what caused their deaths.  Doc. 31 ¶¶ 191, 194, 196, 197.

weapons from outside the Prison, and stockpile weapons." *Id.* ¶ 169. He also alleges that the defendants "did not perform adequate searches and or shakedowns" or conduct adequate visual inspections of cells. *Id.* ¶ 170. Moreover, Brooks claims that HSP was "routinely understaffed." *Id.* ¶ 172.

    2. *McKee's Transfer*

Brooks alleges that the conditions in E Dorm worsened when Charles McKee, an inmate who identified as LGBTI, was transferred and assigned as Brooks' roommate. *Id.* ¶¶ 75, 77. Brooks alleges that the defendants knew McKee's transfer would create dangerous conditions in E Dorm because the dormitory predominantly housed "Blood gang and gangster disciple members" who "hate and do not tolerate the presence of persons categorized as LGBTI" and because McKee was only "one of a handful of Caucasian inmates in the E dorm at the time of the Attack." *Id.* ¶¶ 78, 79, 81, 82. Brooks alleges that Washington, specifically, "placed" McKee in E Dorm. *Id.* ¶ 129.

According to Brooks, the defendants were informed that McKee was at risk several times before and after McKee's transfer. Specifically, Brooks claims that he, McKee, and even the inmates who attacked McKee informed the defendants that McKee was not safe in E Dorm. *Id.* ¶¶ 89, 93, 132. Brooks claims several defendants, including Washington, heard inmates yell "don't put another white faggot in here" as McKee was escorted into E Dorm. *Id.* ¶ 87. Additionally, Brooks alleges that about one week before the attack, McKee spoke to several defendants about the danger he faced in E Dorm. *Id.* ¶ 235(o).

Brooks also claims that a white supremacist racially motivated shooting in Buffalo, New York, one week before the May 2022 attack led to prisons across the

country going "on high alert and/or lockdown to de-escalate potentially violent retaliations by Black inmates against Caucasian inmates." *Id.* ¶¶ 99, 100. According to Brooks, HSP "did not take this threat seriously and did not protect Caucasian inmates from reprisal attacks." *Id.* ¶ 101.

### 1. The May 22, 2022 Attack

On May 22, 2022, "despite recognizing the minimum number of officers required on duty to be 36, [HSP] fielded only [seven] officers." *Id.* ¶ 103. Brooks claims that the defendants "knew of the elevated levels of danger that inevitably come with a low guard to prisoner ratio." *Id.* ¶ 235(g). Before the attack, McKee was involved in a "scuffle" with his attackers while on his way to the showers. *Id.* ¶¶ 105-07. Brooks claims he "left his cell to separate Mr. McKee from the assailants" and he and McKee returned to their cell. *Id.* ¶ 106. Then, at around 7:00 p.m., McKee left the cell again and was attacked. *Id.* ¶¶ 108-09. Brooks "attempt[ed] to defend Mr. McKee," and "was brutally beaten, stabbed and maimed by the attackers." *Id.* ¶ 110.

According to Brooks, only one defendant—Macklin—was anywhere near the attack when it began. *Id.* ¶¶ 113, 137. Macklin was allegedly nearby doing paperwork at the start of the assault. *Id.* ¶ 114. According to an investigative report by the GDC, Macklin heard noises from the attack and went to the scene to investigate. *Id.* Brooks does not allege exactly when Macklin arrived at the scene, but Brooks states that she was not in "eyesight or earshot" for "a majority of the Attack." *Id.* ¶ 128. When Macklin arrived, she allegedly saw inmates "running around the dorm with 'shanks' in their hands stabbing each other." *Id.* ¶ 115. She observed McKee fall to the floor and the assailants "continue to stab him, stomp his head, and yell." *Id.* ¶ 117. According to

Brooks, Macklin attempted to open the "sally port" but could not because the inmates were behind "him."[3]  *Id.* ¶ 118.  Macklin stated that she notified Central Control of the attack at about 7:29 pm.  *Id.* ¶ 119. Brooks claims that he "did not receive medical care for at least 45 minutes" after the attack.  *Id.* ¶ 253(b).

Aside from Macklin, Brooks names five other defendants who were on duty on May 22.[4]  Brooks claims that Ellison was in charge of main control, Foye was assigned to central control, Floyd was a shift supervisor, and Wilson and Harris were assistant shift supervisors.  *Id.* ¶¶ 257 (d)-(g).  Brooks claims that Ellison, Foye, Floyd, Wilson, and Harris "did not aid in mitigating the damages caused…or attempt to provide [him] medical care for approximately 45 minutes."  *Id.*

### 2. Brooks' Injuries

After the attack, Brooks was transported to a "hospital."[5]  *Id.* ¶ 155.  He suffered several injuries to his face and eyes as well as lacerations to his upper back, wrist, and leg.  Doc. 31. ¶ 151.  Brooks alleges that the assault caused him increased constipation, urinary hesitancy, blood in his stools, blindness in his left eye, impaired vision in his right eye, impaired hearing, permanent disfigurement, numbness in his left hand, and constant headaches and pain.  *Id.*  ¶¶ 156-58, 160-62.

Brooks was transported from the hospital to "the prison infirmary metro"[6] until he was eventually transported to Augusta State Medical Prison.  *Id.* ¶ 155.  He claims that

---

[3] Brooks does not identify "him."

[4] Brooks alleges that seven officers were on duty, but he identifies only six officers.

[5] Brooks does not allege which hospital, how long he was in that hospital, who treated him at the hospital, or if any HSP staff accompanied him to the hospital.  Almost certainly, Brooks was taken by ambulance to a local hospital.

[6] The location of the prison infirmary metro is not alleged.

his "medically necessary" CPAP machine was stolen while he was at the hospital.  *Id.* ¶ 262(a).  He also claims that he asked for a second opinion regarding his eye injury, "but the provider said that second opinions are not the policy here."  *Id.*  ¶ 262(b).  He alleges that he had a stitch left in his ear, and he "told providers…but they did nothing about it for almost [three] months because they did not want to open his prison cell."  *Id.* ¶ 262(c).  Additionally, Brooks' prosthetic eye was "initially too small for his eye socket, and it would fall out of his eye whenever he bent over."  *Id.* ¶ 262(d).  Brooks also claims that he did not receive some of his medication, such as "medically necessary ointment for his eye socket" and that he received his prescribed pain medication late on two occasions.  *Id.*  ¶¶ 262 (e)–(h).  Notwithstanding his detailed allegations of deficiencies in his care and treatment, Brooks does not identify who his "providers" were.

## B. Procedural History

Brooks filed this action on May 20, 2024.  Doc. 1.  On August 2, 2024, the Court granted Brooks' motion to amend his complaint.  Doc. 4.  In his amended complaint, Brooks classifies the defendants into two groups: (1) "direct defendants"[7] and (2) "supervisory defendants."[8]  Doc. 31.

As best the Court can tell, Brooks' claims can be categorized as follows.  Counts One and Two allege deliberate indifference to safety claims against all defendants.  *Id.* ¶¶ 220-42.  Count Three alleges a failure to intervene claim against all defendants.

---

[7] The direct defendants are Macklin, Harris, Floyd, Ellison, Crayton, Foye, Jones, Lewis, Reeves, Tucker, Wiley, Williamson, Wilson, Hunt, Tukes, Jezewski, Franklin, Wright, Battle, and Scarborough.  Doc. 31 ¶¶ 11-30.

[8] The Supervisory defendants are Toby, Foston, Washington, and Ivey.  Doc. 31 ¶ 10.

*Id.* ¶¶ 243-49.  Count Four alleges a deliberate indifference to medical needs claim against all defendants.  *Id.* ¶¶ 250-69.  Counts Five and Six allege claims against the "Supervisory Defendants" under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (2018) for policies of improper staffing, mismanagement, and false reporting of the causes of inmate deaths.  *Id.* ¶¶ 270-99.  Count Seven alleges a supervisory liability claim under *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) against the Supervisory Defendants and Floyd, Wilson, and Harris.  *Id.* ¶¶ 300-09.

On August 23, 2024, the defendants moved to dismiss Brooks' amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Doc. 35. Specifically, the defendants claim that Brooks has failed to plausibly allege violations of his constitutional rights, and, even if he had, he fails to cite clearly established law that would have provided notice to the defendants that their acts or omissions violated his constitutional rights.  *Id.*

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of

being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic …. the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should

not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).  Brooks does not dispute that the defendants were acting within their discretionary authority, so the burden shifts to Brooks.  Doc. 36.

To overcome a qualified immunity defense, Brooks must plausibly allege that (1) the facts, viewed in their favor, establish a constitutional violation; and (2) the new defendants violated law that was clearly established at the time of the alleged violation. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).  This two-step analysis may be done in whatever order is deemed most appropriate for the case.  *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A right becomes "clearly established" in three ways.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  First, Brooks can show that a materially similar case has already been decided, consisting of binding precedent by the United States Supreme Court or the Eleventh Circuit.  *Id*.  Second, Brooks can show that a broader clearly established principle should control the novel facts of the particular case—that is, the unconstitutionality of the instant conduct must be apparent by looking to the guiding principles of the previous case, irrespective of the underlying factual situation.  *Id*. Third, Brooks can show that the conduct is so egregiously unconstitutional that prior case law is unnecessary.  *Id*.

### III. DISCUSSION

The Court concludes that Brooks has stated a claim for the following counts: Count One against defendants Toby and Washington; Count Two against Washington; and Count Three against Macklin.  For those defendants, the Court further concludes,

based on Brooks' allegations, that they had sufficient notice that their acts or omissions violated Brooks' constitutional rights.  All Counts against the remaining defendants are dismissed without prejudice.

### A. Counts One and Two: Deliberate Indifference to Safety

Count One claims that the defendants were deliberately indifferent to a substantial threat of serious harm to Brooks caused by the general conditions at HSP. Doc. 31 ¶¶ 220-26.  Count Two claims that the defendants were deliberately indifferent to the dangerous conditions McKee's transfer created in E Dorm.  *Id.* ¶¶ 227-42.  The defendants argue that Brooks failed to plausibly allege (1) that any defendant had knowledge of a substantial risk of harm to Brooks; (2) that any defendant knew that his or her conduct caused a substantial risk of serious harm to Brooks; and (3) that the conduct of any defendant caused Brooks' injuries.  Doc. 35-1 at 7-11.

Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates."  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014); *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").  To state a claim for failure-to-protect, Brooks must plausibly allege: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard."  *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016).  To prevail, a plaintiff must allege "conditions that were extreme and

posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307). Plaintiffs can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a "specific threat" to the prisoner. *Marbury*, 936 F.3d at 1233, 1235; see also *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005).

To state a claim of deliberate indifference based on general prison conditions, "a plaintiff must show 'more than a generalized awareness of risk.'" *Marbury*, 936 F.3d at 1234 (citation omitted). Rather, "[t]o establish deliberate indifference based on a generalized risk, the plaintiff must show 'that serious inmate-on-inmate violence was the norm or something close to it.'" *Id.* at 1233 (quoting *Purcell*, 400 F.3d at 1322).

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839). Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837). The determination of whether a risk has been disregarded is objective: "[T]he [defendant] must have responded to the known risk in an unreasonable manner." *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1262. In other words, "a

defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found liable' under the Eighth Amendment." *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 837) (internal citation omitted).  To allege that "the defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Id.*

"Finally, the plaintiff must show a 'necessary causal link' between the defendant's failure to act reasonably and the plaintiff's injury."  *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 623).  This causal connection requires that the defendant "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024) (quoting Rodriguez, 508 F.3d at 622).

### 1. Count One

In Count One, Brooks alleges that all defendants fostered, and were deliberately indifferent to, "an environment of extreme violence" at HSP.  Doc. 31 ¶¶ 223, 224.  In other words, Brooks alleges that the defendants were deliberately indifferent to a general threat of inmate-on-inmate violence at HSP.

First, Brooks plausibly alleges "that serious inmate-on-inmate violence was the norm or something close to it" at HSP.  *Marbury*, 936 F.3d at 1233 (quoting *Purcell*, 400 F.3d at 1322).  He alleges that there were at least ten inmate deaths in the years before the assault and that there were  "numerous people…stabbed and maimed in [HSP]"

both before and after the May 22 attack.  Doc. 31 ¶ 188-198.  He alleges that there was

no segregation of inmates based on histories of violence or mental illness; that HSP

staff failed to detect weapons and cell phone usage; and that HSP was "routinely

understaffed." *Id.* ¶¶ 165-69, 172.  Thus, Brooks plausibly alleges a serious risk of harm

based on HSP's general conditions.  *See Marsh v. Butler Cnty.*, 268 F.3d 1014, 1020

(11th Cir. 2001) (en banc), *abrogated in part by Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 561-63 (2007) (finding a substantial risk of harm based on allegations of

inadequate monitoring of inmates, lack of visual inspections, inmates' possession of

weapons, lack of segregation of violent prisoners, understaffing, and prior inmate

assaults).

However, to state a claim for deliberate indifference, Brooks must also plausibly

allege deliberate indifference and causation.  *Wade*, 106 F.4th at 1255; *Marbury*, 936

F.3d at 1233.  In other words, he must allege that each defendant knew that Brooks

faced a serious risk of harm because of the general conditions at HSP, that each

defendant knew his or her conduct would put Brooks at risk of serious harm, and that

each defendant's conduct caused the conditions about which Brooks complains.  *Wade*,

106 F.4th at 1255; *Marbury*, 936 F.3d at 1233.  Deliberate indifference and causation

overlap in that each element requires the Court to inquire into whether "a particular

defendant had the (authority and means) to provide adequate security and did not do

so."  *Williams v. Bennet*, 689 F.2d 1370, 1389 (11th Cir. 1982).[9]  Here, Brooks fails to

---

[9] *See Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1075 n.28 ("To be clear, authority and means to remedy
the excessive risk of inmate violence bears directly on causation; however, it overlaps with deliberate
indifference because an official can rarely manifest a deliberately indifferent state of mind by failing to do
something that was not in the official's power to do.  Accordingly, the court considers authority and power
as to deliberate indifference and causation.").

plausibly allege that all but two of the defendants had the requisite knowledge and the authority and means to improve the security measures at HSP.

For the "direct defendants," Brooks does not plausibly allege that any of them had the authority to address the general conditions at HSP. In fact, Brooks fails to allege any facts regarding the conduct or responsibilities of fourteen of the defendants—Tukes, Jezewski, Hunt, Franklin, Wright, Battle, Scarborough, Crayton, Jones, Lewis, Tucker, Reeves, Wiley, and Williamson. He alleges only that those defendants were "employed as…correctional officer[s] by the [GDC]" and that some of them were listed on an incident report as "directly involved in the attack." Doc. 31 ¶ 15, 18, 19-22, 24-30, 127. But he does not state that any of the defendants knew about the dangerous conditions at HSP or that they had the authority to address the danger to Brooks and the other inmates. Thus, Brooks does not allege that those defendants acted with deliberate indifference to his safety or that their alleged misconduct caused the general conditions of harm at HSP.

That leaves Brooks' claims against the "supervisory defendants"—Ivey, Foston, Toby, and Washington. Like the direct defendants, supervisory defendants can be liable under the Eighth Amendment if they personally participated in the alleged unconstitutional conduct. *See Marbury*, 936 F.3d at 1231 (addressing a warden's deliberate indifference to substantial risk of serious harm without the supervisory causal connection framework). Alternatively, a supervisor can be liable if there exists a causal connection between the "supervisor's actions and the alleged constitutional violation" or if "a supervisor's custom or policy . . . result[ed] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keith v. Dekalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (citation omitted). In relation to the latter causal connection, the Eleventh Circuit has held that "[a] causal connection can be established if a supervisor has the ability to prevent or stop a known constitutional violation by exercising his supervisory authority and he fails to do so." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1190 (11th Cir. 2011) (citing *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010)).

To begin, Brooks fails to state a claim for deliberate indifference against Foston and Ivey because he does not allege that they personally participated in the alleged violation or that they had the authority and means to address the security issues at HSP. Brooks alleges that Foston was a "deputy warden of care and treatment," a role that required "the supervision of educational programs health services, library services, counseling programs, recreational services and the mental health services" of inmates. Doc. 31 ¶ 6. As for Ivey, Brooks alleges only that Ivey was "employed as a correctional officer and or prison warden and or supervisor by the [GDC]." *Id.* ¶ 9. Brooks does not state how Foston or Ivey would have the authority or means to address the security conditions at HSP. Thus, he fails to plausibly allege that either Foston or Ivey was deliberately indifferent or that their conduct caused a substantial risk of serious harm to Brooks.

However, Brooks has plausibly alleged that Toby and Washington were deliberately indifferent to a substantial risk of serious harm. He alleges that Toby, as warden at HSP, "was responsible for overseeing 357 staff members and 1,191 close-security male offenders." Doc. 31 ¶ 4. Similarly, Brooks alleges that Washington was a

"Deputy Warden of security…responsible for overseeing security staff members and over 900 medium-security male offenders." *Id.* ¶ 8. He alleges that both Toby and the supervisory defendants, including Washington, failed to "address staffing and mismanagement problems that they have known about for years." *Id.* ¶ 271.

Brooks' allegations regarding the nature of Toby and Washington's positions establish at least the inference that Toby and Washington (1) knew of the alleged dangerous conditions at HSP and (2) knew that their alleged inaction put Brooks at a substantial risk of serious harm. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to the usual ways, including inference from circumstantial evidence."). Similarly, Brooks plausibly alleges causation by claiming that Toby and Washington did not address the security measures at HSP, even though their positions gave them the ability and responsibility to do so. Doc. 31 ¶ 271. Brooks has, therefore, plausibly alleged that Toby and Washington were deliberately indifferent to a substantial risk of serious harm to Brooks based on the general conditions at HSP.[10]

Further, clearly established law provided Toby and Washington notice that their alleged deliberate indifference to the violent conditions at HSP violated Brooks' Eighth Amendment rights. *See Farmer*, 511 U.S. at 847 ("Accordingly, we…hold that a prison official may be liable under the Eighth Amendment…if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *See also Patel v. Lanier Cnty Ga.*, 969 F.3d 1173, 1190 (202)

---

[10] The Court acknowledges the defendants' argument suggesting that Brooks, in a misguided attempt to assist to help McKee, could well have been the author of his own misfortune. Doc. 35-1 at 7-8. That is not an argument that can be resolved on the pleadings.

("Broad [deliberate indifference] principle[s] ha[ve] put all law-enforcement officials on notice that if they actually know about a condition that poses a substantial risk of serious harm and yet do nothing to address it, they violate the Constitution.")

Accordingly, Count One is **DISMISSED without prejudice** as to every defendant except Toby and Washington.

    2.  *Count Two*

Although Count Two reads a lot like Count One, the thrust of Count Two in the end is that the defendants were deliberately indifferent to a substantial risk of serious harm to Brooks when they placed McKee in E Dorm.  Doc. 31 ¶ 229.

Brooks only plausibly alleges that one defendant—Washington—was responsible for McKee's transfer.  With respect to Washington, Brooks alleges that "Mr. McKee was placed in E Dorm by Defendant Washington in spite of his pleadings with prison officials including Ms. Washington to be put in isolation."  *Id.* ¶ 198.  Brooks also alleges that he, McKee, and the assailants informed Washington that "[McKee] would not live" if he were transferred to E Dorm.  *Id.* ¶ 235(n).  Brooks, therefore, plausibly alleges that Washington acted with deliberate indifference by placing McKee in E Dorm even though she knew that McKee's presence in the dormitory created a substantial risk of serious harm.  And again, clearly established law provided Washington with notice that her alleged deliberate indifference to that risk violated the Eighth Amendment.  *Nelson,* 89 F.4th at 1299 ("And it was clearly established that an officer violates [the duty to take reasonable action to protect prisoners] if he 'knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take [reasonable] action' to separate them."  (quoting *Caldwell*, 748 F.3d at 1102)).

As for the other defendants, Brooks fails to allege that any of them were responsible for McKee's transfer.  He merely alleges that "[i]n spite of [their] knowledge of certain danger, Defendant Washington, Supervisory Defendants, and Direct Defendants were deliberately indifferent to it and transferred Mr. McKee into the E Dorm."  Doc. 31 ¶ 231.  But Brooks fails to allege facts to support his conclusory allegation that *every defendant* transferred McKee, much less that they transferred him with deliberate indifference to a known risk.

Accordingly, Count Two is **DISMISSED without prejudice** as to every defendant except Washington.

### B. Count Three: Failure to Intervene

Count Three asserts against all defendants a "CLAIM FOR FAILURE TO INTERVENE TO PREVENT CONSTITUTIONAL RIGHTS VIOLATIONS."  *Id.* at 67.  But for the most part, Count Three is a restatement of the failure to protect claim alleged in Count One.  Only in the end does Brooks allege all defendants "had sufficient time and opportunity to intervene and prevent Mr. Brooks' injuries."  *Id.* ¶ 247.  The defendants understandably read Count Three to allege only a failure to intervene claim and thus argue that Brooks does not plausibly allege that any defendant was in a position to intervene.  Doc. 35-1 at 11-13.

Defendants "may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation *occurs in their presence*."[11]  *Terry v. Bailey*,

---

[11] The defendants apparently assume that Brooks can allege a failure to intervene claim based on an inmate-on-inmate assault.  *See Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault); *but see Johnson v. Boyd,* 568 F. App'x 719, 722 n.2 (11th Cir. 2014) ("While it is well settled that *Ensley* applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force, we have not explicitly adopted this holding in a situation involving an

376 F. App'x 894, 896 (11th Cir. 2010) (emphasis added) (citing *Ensley*, 142 F.3d at 1407). "However, in order for liability to attach, the [defendant] must have been in a position to intervene." *Id*.

According to Brooks' amended complaint, only seven of the defendants were at HSP during the attack, and "there was no staff in the control booth or anywhere in eyesight or earshot" immediately before and during the attack. Doc. 31 ¶¶ 103, 128. Brooks alleges that only defendant Macklin was in the area after the attack. *Id.* ¶ 113, 137. Thus, Brooks has not shown that the defendants who were not in the area were in a position to protect Brooks from the attack.

As for Macklin, Brooks alleges that "for much of the Attack," she "was not in E Control." *Id.* ¶ 137. However, at some point, Macklin went to the scene of the attack and "saw multiple inmates running around the dorm with 'shanks' in their hands stabbing each other." *Id.* ¶ 115. He alleges that Macklin first attempted to access the inmates and could not gain access. *Id.* ¶ 118. She allegedly notified central control of the attack approximately 30 minutes after it began. *Id.* ¶ 119.

The defendants argue that Brooks does not plausibly allege that Macklin was in a position to intervene to protect him from the assault. Doc. 35-1 at 13. However, construed liberally, Brooks plausibly alleges that Macklin could have called for help sooner than she did. Thus, Brooks plausibly alleges that Macklin failed to act timely to the alleged unconstitutional conduct she witnessed.

---

officer observing a fight between inmates.") (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).

As noted, no clearly established law puts officials on notice that they must physically intervene in a physical altercation, particularly when the altercation is essentially a riot and the officer is alone.  However, Brooks' claim that Macklin unconstitutionally delayed her report of the unfolding riot is more properly characterized as a failure to protect claim.  And, again, it is clearly established that an officer must respond appropriately to constitutional violations of which they have actual knowledge. *Farmer*, 511 U.S. at 847.  By any measure or standard, that would include promptly reporting these violations, which Macklin allegedly failed to do.

Accordingly, Count Three is **DISMISSED without prejudice** as to every defendant except for Macklin.

### C.  Count Four: Deliberate Indifference to Medical Needs

Count Four is a claim for the defendants' deliberate indifference to Brooks' serious medical needs both immediately after the May 22 assault and during his recovery.  Doc. 31 ¶¶ 250-269.  The defendants argue that no defendant was deliberately indifferent to Brooks' medical needs immediately after the attack and that Brooks does not allege a causal connection between the defendants' actions and Brooks' alleged lack of medical care during his recovery.  Doc. 35-1 at 13-15.  The Court agrees.

To state a claim for deliberate indifference to a serious medical need, a plaintiff must allege: (1) "an objectively serious medical need"; (2) "that the prison official acted with an attitude of 'deliberate indifference' to the serious medical need;" and (3) a "'necessary causal link' between the challenged conduct and [the plaintiff's] injuries."

*Stalley v. Cumbie*, 124 F.4th 1273, 1283 (2024) (quoting *Farmer*, 511 U.S. at 836-40 and *Marbury*, 936 F.3d at 1233); *See Wade,* 106 F.4th at 1253 (11th Cir. 2024).

As for the first prong, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended. *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003). As stated above, to state a claim for deliberate indifference, the plaintiff must allege that the defendant (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839).

   *1. Deliberate Indifference Immediately After the Attack*

Brooks' amended complaint fails to plausibly allege that any defendant was deliberately indifferent to Brooks' medical needs immediately after the assault. First, the amended complaint does not state how the off-duty defendants would have known about the attack or about Brooks's injuries.

Second, Brooks has not plausibly alleged that the defendants who were on duty—Ellison, Floyd, Foye, Harris, Wilson, and Macklin—acted with deliberate indifference to his injuries. Brooks alleges that the on-duty defendants "did not aid in mitigating the damages caused to Mr. Brooks or attempt to provide medical care for approximately 45 minutes." Doc. 31 ¶¶ 254(c)-(g). However, Brooks also alleges that no defendant was "anywhere in eyeshot or earshot" of the attack when it began. *Id.* ¶

128.  The first defendant to observe the attack was Macklin, who allegedly "got up to see what was going on" when she heard noises.  *Id.* ¶ 114.  She tried to access Brooks and the other inmates, but she could not get into the area because "all the inmates were right behind 'him.'"  *Id.* ¶ 118.  Rather, she called for help at approximately 19:29.  *Id.* ¶ 119.  Macklin, as discussed, may have delayed reporting the unfolding riot.  Brooks further alleges that Macklin "saw inmates stabbing each other with 'shanks' and [saw] blood spewing out of inmates—including Mr. Brooks."  *Id.* ¶ 253(a).  However, Brooks does not plausibly allege what Macklin could have done to address his medical needs at that point, other than to timely report the melee.  That failure, however, is the subject of Count Three.  According to Brooks, the other on-duty defendants arrived approximately 45 minutes after the fight began, which was around 16 minutes after Macklin called central control.  *Id.* ¶¶ 254(a)-(i).  For those defendants, Brooks does not plausibly allege that they had actual knowledge of Brooks' injuries or that they acted unreasonably in response to his medical needs.  In any event, Brooks cites no clearly established law that would have put any defendant, including Macklin, on notice that their acts or omissions constituted unconstitutional indifference to his medical needs.  On the contrary, the cases he cites are both factually and, perhaps more significantly, legally inapposite.[12]

---

[12] Brooks alleges that the defendants' actions were "more than mere or gross negligence" and that they "utterly refused to act."  Doc. 31 ¶ 256.  In *Wade*, the Eleventh Circuit held that to state a claim for deliberate indifference, a plaintiff must allege the defendants acted with "subjective recklessness as used in the criminal law" rather than the mere or gross negligence standards used by previous courts.  106 F.4th at 1255.  As Judge Jordan stated in the concurrence, cases that analyze deliberate indifference claims using negligence standards "probably have been abrogated to at least some degree by [*Wade*]."  *Id.* at 1265 (Jordan, J., Concurring).

### 2.  Deliberate Indifference During Brooks' Recovery

Brooks also alleges that the defendants acted with deliberate indifference to his medical needs while he was recovering from his injuries.  Specifically, Brooks alleges that "[a] series of incidents closely related in time may disclose a pattern of conduct amounting to deliberate indifference."  *Id.* ¶ 261.  These incidents include his CPAP machine being stolen, Brooks being denied a second opinion about his eye issues, a stitch that was left in his ear for nearly three months, problems with his prosthetic eye, a delay in receiving pain medication, and more.  *Id.* ¶¶ 262(a)-(h).  But Brooks does say which defendant, if any, was responsible for the alleged deprivations.  Nor does he allege that any defendant knew their conduct would cause the alleged poor medical care.[13]

Accordingly, Count Four is **DISMISSED without prejudice**.

### D.  Counts Five, Six, and Seven: *Monell* and *Canton* Liability Claims

In Counts Five, Six, and Seven, Brooks purports to assert claims under *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658 (2018) and *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).  Count Five claims that Toby and the supervisory defendants established "a de facto policy of improper staffing and mismanaging [HSP]."  Doc. 31 at 90-91.  Count Six claims that defendant Toby and the Supervisory Defendants "engaged in a custom and policy that obscures the level of harm existent by

---

[13] The amended complaint does not identify any provider and fails to allege whether Brooks was even at HSP after the attack.  There is no indication in the complaint that *any* defendant—supervisory or otherwise—was with Brooks at those facilities or was responsible for his medical care.  The obvious pleading deficiencies in Brooks' deliberate indifference to medical needs claims are likely a consequence of his dismissal of the Georgia Board of Regents, whose employees or agents provide medical services to inmates.

ignoring violence and or inaccurately classifying violent acts and causes of death under

that occur in [HSP]." *Id.* at 96. Count Seven is a claim against Toby, Floyd, Wilson,

Harris, and the Supervisory Defendants under *Canton* for supervisory liability. *Id.* at 97-

98. The defendants argue that Brooks fails to allege "that any of the supervisor

defendants established a policy of improperly staffing and mismanaging HSP." Doc. 35-

1 at 15.

Assuming Brooks alleges *Monell* or *Canton* claims against the individual

defendants, they fail. Under *Monell*, "municipalities and other local government units"

can be liable under § 1983 when the municipality's "official policy" causes a

constitutional violation. *Monell*, 436 U.S. at 694-95. In *Canton*, the Supreme Court,

relying on *Monell*, held that a municipality can be liable under § 1983 for inadequate

training of its employees. *Canton*, 489 U.S. at 388. However, *Canton* and *Monell* only

apply to municipalities or municipal officials sued in their official capacity. *See Monell*,

436 U.S. at  690 n.54 ("Our holding today is, of course, limited to local government units

which are not considered part of the state for Eleventh Amendment purposes."); *see*

*also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (explaining that official

capacity suits "against municipal officers are therefore, in actuality, suits directly against

the city the officer represents"). Brooks has brought this action against *state* officials in

their *individual* capacities who are not subject to liability under *Monell*. *See Busby*, 931

F.3d at 776 (distinguishing between actions against an officer in his or her individual

capacity and *Monell* actions against a municipal officer "in his or her official capacity");

s*ee also Gatchel v. Henry Cnty. Ga*., 2023 WL 6216529, at *4 (N.D. Ga. June 20, 2023)

(stating that because the defendants "have been sued only in their individual capacities,

*Monell* is not a proper vehicle for establishing Section 1983 liability"); *Thomas v. Hall*, 2023 WL 9058514, at *4 (N.D. Fl. November 27, 2023) ("Plaintiff is not suing a municipality….Nor is he suing a municipal employee in his official capacity. Thus, the *Monell* standard does not apply to Plaintiff's claims.").

In any event, Counts Five, Six, and Seven do not allege *Monell* and *Canton* claims; rather they allege supervisory liability claims against the defendants in their individual capacities, and those claims are no different than the deliberate indifference to safety claims set forth in Counts One and Two. In Counts One and Two, Brooks alleges that the supervisory defendants were "aware of many problems" at HSP. Doc. 31 ¶ 225. He alleges that the "Supervisory Defendants chose to understaff the entire prison as well as the E Dorm." *Id.* ¶ 236(b). He also alleges that the defendants "failed to oversee, supervise, and properly ensure the safety of inmates." *Id.* ¶ 236(o). In other words, Counts One, Two, Five, Six, and Seven all allege that the supervisory defendants are liable because they acted with deliberate indifference to a custom or policy of mismanagement, understaffing, and inadequate supervision, which Brooks claims caused the dangerous conditions at HSP. Thus, Counts Five, Six, and Seven are superfluous.

Accordingly, Counts Five, Six, and Seven are **DISMISSED without prejudice**.

## IV. CONCLUSION

The defendants' Motion to Dismiss (Doc. 35) is **GRANTED** in part and **DENIED** in part.[14] Count One will proceed against Toby and Washington. Count Two will

---

[14] In his response to the defendants' motion to dismiss, Brooks requests leave to "amend the Amended Complaint should any deficiencies be found." Doc. 36 at 16. Brooks' request in a responsive brief is not a proper motion to amend. *See Newton v. Duke Energy Fl., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition

proceed against Washington.  Count Three will proceed against Macklin.  All other claims are **DISMISSED without prejudice.** [15]

  **SO ORDERED**, this 21st day of March, 2025.

S/ Marc T. Treadwell<br>MARC T. TREADWELL, JUDGE<br>UNITED STATES DISTRICT COURT

---

memorandum, the issue has not been raised properly."). Accordingly, Brooks' request to amend is **DENIED**.  Further, Brooks' counsel is engaged in discovery in a related case.  S*upra* note 1.  If grounds to amend exist, he should file a proper motion.

[15] In paragraph one of the complaint, Brooks alleges that the defendants "acted in concert with one another to violate Plaintiff's right of access to the courts under the First and Fourteenth Amendments by filing false reports and taking actions to cover up their misconduct after the fact."  Doc. 31 ¶ 1.  But none of the counts allege a First Amendment violation.  At any rate, to state a claim for denial of access to the courts, Brooks must allege that he was denied access to some legal resource that "hindered his 'efforts to proceed with a legal claim…seeking to vindicate basic constitutional rights.'"  *Wilson v. Blakenship*, 163 F.3d 1284, 1291 (11th Cir. 1998).  Brooks does not plausibly allege that he has been denied access to the courts.